**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL SALLY, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| H&M HENNES & MAURITZ LP, | ) | |
| Serve: Registered Agent | ) | JURY TRIAL DEMANDED |
| CSC-LAWYERS INCORPORATING | ) | |
| SERVICE COMPANY | ) | |
| 221 Boliver St. | ) | |
| Jefferson City, MO 65101 | ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiff Randall Sally, on behalf of himself and all others similarly situated, through his attorneys, and brings this action against Defendant H&M Hennes & Mauritz LP (hereinafter referred to as "Defendant" or "H&M"); and, upon information and belief, except as to the allegations that pertain to himself, which are based upon personal knowledge, alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action on his own behalf and as a representative of a class of persons similarly situated who purchased H&M products for personal, family, or household purposes.

2.     In recent years, consumers have become significantly more aware of and sensitive to the impact of clothing and household products on the environment.  Consumers seek, and will pay a premium for, products that are responsibly made, including products made from materials that will not negatively affect the environment.

3.     As a result, demand has increased for "green" products that are made from recycled, sustainable, and environmentally friendly materials.

4.     This is a class action lawsuit against H&M for selling a variety of personal, family, or household clothing products labeled with a green hangtag that claims that they are made with recycled and/or organic materials, when, in fact, they are made with virgin synthetic, conventionally grown, and/or non-organic materials. (identified in Exhibit A attached hereto) (hereinafter the "'H&M Products" or the "Products").[1]

5.     This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of H&M with respect to the marketing and sale of the Products, which are sold throughout the State of Missouri and the United States.

6.     In an effort to increase profits and to gain an advantage over its lawfully acting competitors, H&M falsely and misleadingly markets the Products as made with "recycled" and/or "organic" materials.  H&M labels the Products with a green hangtag that claims that the Products are made with "recycled" and/or "organic" materials.  Contrary to these representations, ***the Products are not made with any "recycled" and/or "organic" materials.***  Thus, the Products are not made from any recycled and/or organic materials that are less harmful and more beneficial to the environment.  The marketing and labeling deceives consumers into believing that they are receiving Products that are made with "recycled" and/or "organic" materials, but H&M's Products do not live up to these claims.

---

[1] This action concerns all H&M clothing products that are labeled with a green hangtag that claims that they are made with "recycled" or "organic" materials when they are not.  H&M admits that these Products are not made from "recycled" and/or "organic" materials.  And a sampling of these particular Products has been independently tested and found to contain no "recycled" materials.  Discovery will reveal the exhaustive list of substantially similar and falsely labeled H&M clothing products that are included in this action.  Plaintiff reserves the right to amend this Complaint to include any additional items sold by H&M that are within the scope of this Complaint.

7.      Conscious of consumers' increased interest in more "green" products that are made from recycled and organic materials, and willingness to pay more for products perceived to meet this preference, H&M misleadingly, illegally, and deceptively seeks to capitalize on these consumer "green" trends.

8.      Plaintiff purchased the Products in reliance on H&M's representations that these Products are made with "recycled" and/or "organic" materials.  He would not have purchased the Products if he had known that they were not made with any recycled and/or organic materials.

9.      Consumers expect products that are marketed as made with "recycled" and/or "organic" materials to be made from recycled and/or organic materials that are less harmful and more beneficial to the environment.

10.     Plaintiff and the Class reasonably believed H&M's false and misleading representations.  H&M knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under Missouri law and common law.

11.     H&M misrepresented, and/or concealed, suppressed, or omitted material facts in connection with the sale, distribution, and/or advertisement of the Products.

12.     Plaintiff and the Class Members paid a premium for the Products over comparable products that did not purport to be made with "recycled" and/or "organic" materials.  Given that Plaintiff and Class Members paid a premium for the Products based on H&M's representations that they are made with "recycled" and/or "organic" materials, Plaintiff and the Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

13.     Plaintiff brings claims against H&M individually and on behalf of the Class Members who purchased the Products during the applicable statute of limitations period (the

"Class Period") for (1) violation of the Missouri Merchandising Practices Act ("MMPA"), §
407.010 *et. seq.*; (2) breach of express warranty; (3) breach of implied warranty of
merchantability; (4) unjust enrichment; (5) negligent misrepresentation; and (6) fraud.

## PARTIES

14.     At all relevant times, Plaintiff Randall Sally was and is a citizen of the State of
Missouri, residing in St. Louis County.  During the Class Period, Plaintiff has purchased H&M
Products for personal, family, or household use from an H&M store in St. Louis County,
Missouri.  Plaintiff's purchases include, without limitation, H&M Satin Resort Shirt Bright blue
and H&M Ankle-length Satin Skirt Black in the State of Missouri.  Accordingly, Plaintiff has
been injured as a result of Defendant's unlawful conduct alleged herein.

15.     Plaintiff purchased the H&M Products because he saw the green hangtag labeling,
marketing, and advertising, which represented that the Products are made with "recycled" and/or
"organic" materials.  Plaintiff relied on Defendant's false, misleading, and deceptive
representations that the Products are made with "recycled" and/or "organic" materials.  He
understood this to mean that the Products were made from recycled and/or organic materials
making the Products less harmful and more beneficial to the environment.  Plaintiff would not
have purchased the Products at all, or would have been willing to pay a substantially reduced
price for the H&M Products, if he had known that they were not made from any recycled and/or
organic materials.  Plaintiff would purchase the Products in the future if Defendants changed the
composition of the Products so that they conformed to their made with "recycled" and "organic"
materials marketing, packaging, and labeling, or if the packages and labels were corrected and he
could trust that they were correct.

16.     Defendant H&M Hennes & Mauritz LP is a New Jersey corporation with its principal place of business in Secaucus, NJ. H&M is a multinational clothing company built on direct-to-consumer sales. H&M's Products are sold to consumers through its website and its brick-and-mortar stores. H&M conducts business, including advertising, distributing, and/or selling the H&M Products, throughout Missouri, including the County of St. Louis, Missouri, and the United States.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiffs, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

18.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in Missouri or otherwise intentionally did avail themselves of the markets within Missouri, through their sale of the Product in Missouri and to Missouri consumers.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendants regularly conduct business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

20.     In recent years, consumers have become increasingly concerned about buying clothing that is made from recycled, organic, and sustainable materials that are less harmful and

more beneficial to the environment. Consumers have poured billions of dollars into the "green" and environmentally friendly clothing market.

21. In response to consumers' desire for more environmentally friendly clothing products that are made from recycled, organic, and sustainable materials, many companies "greenwash" their products by deceptively claiming that their clothing is made from materials that are recycled, organic, and sustainable. Unfortunately, rather than creating sustainable and environmentally friendly clothing products that consumers desire, many companies, like H&M, have chosen instead to "greenwash" their products through deceptive labeling, suggesting and outright stating that their clothing products are made from recycled, organic, and sustainable materials, when, in fact, they are not. Thus, the clothing products give the false and misleading impression that they are less harmful or more beneficial to the environment than they really are.

### The Federal Trade Commission Regulations and Guidance

22. Recognizing this problem, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[2]

23. The Green Guides state that "[t]he following general principles apply to all environmental marketing claims, including those described in §§ 260.4 – 16. Claims should comport with all relevant provision of these guides." 16 C.F.R. § 260.3. Further, the Green Guides' general principles state:

(c) **<u>Overstatement of environmental attribute:</u>** An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. **<u>Marketers should not state or imply environmental benefits if the benefits are negligible.</u>**

*Id.* (emphasis added).

24. In addressing "General Environmental Benefit Claims," the Green Guides state:

---

[2] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.

(a) **It is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit.**

(b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits **and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.**

(c) Marketers can qualify general environmental benefit claims to prevent deception about the nature of the environmental benefit being asserted. To avoid deception, marketers should use clear and prominent qualifying language that limits the claim to a specific benefit or benefits. Marketers should not imply that any specific benefit is significant if it is, in fact, negligible. If a qualified general claim conveys that a product is more environmentally beneficial overall because of the particular touted benefit(s), marketers should analyze trade-offs resulting from the benefit(s) to determine if they can substantiate this claim.

(d) Even if a marketer explains, and has substantiation for, the product's specific environmental attributes, this explanation will not adequately qualify a general environmental benefit claim if the advertisement otherwise implies deceptive claims. Therefore, marketers should ensure that the advertisement's context does not imply deceptive environmental claims.

16 C.F.R. § 260.4 (emphasis added).

    25.     The Green Guides also provide examples of General Environmental Benefit

Claims in order to "provide the Commission's views on how reasonable consumers likely

interpret certain claims."[3]    The FTC provides the following relevant examples:[4]

> **Example 1:** The brand name "Eco-friendly" likely conveys that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive. **A claim, such as "Eco-friendly: made with recycled materials," would not be deceptive if: (1) the statement "made with recycled materials" is clear and prominent; (2) the marketer can substantiate that the entire product or package, excluding minor, incidental components, is made from recycled material;** (3) making the product with recycled

---

[3] 16 C.F.R. § 260.1(d).
[4] 16 C.F.R. § 260.4.

materials makes the product more environmentally beneficial overall; and (4) the advertisement's context does not imply other deceptive claims.

\*\*\*

**Example 3:** A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type, the marketer states, "Buy our printer. Make a change." **Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.**

*Id.* (emphasis added).

26.     The Green Guides also specifically address "Recycled Content Claims":

(a)**It is deceptive to misrepresent, directly or by implication, that a product or package is made of recycled content. Recycled content includes recycled raw material, as well as used, reconditioned, and re-manufactured components.**

(b) It is deceptive to represent, directly or by implication, that an item contains recycled content unless it is composed of materials that have been recovered or otherwise diverted from the waste stream, either during the manufacturing process (pre-consumer), or after consumer use (post-consumer).

16 C.F.R. § 260.13 (emphasis added).

27.     The Green Guides further require marketers to ensure that their claims are supported by a reasonable basis prior to making the claim.[5]  A reasonable basis is defined as competent and reliable scientific evidence, such as "tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results."[6]  "Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific

---

[5] 16 C.F.R. § 260.2
[6] *Id.*

fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true."[7]

28.     Moreover, the advertising and marketing of the Products, which are considered textile products, are subject to the Textile Act and Rules, codified as 16 C.F.R. § 303, *et seq.* (hereinafter the "Textile Act").

29.     Under the Textile Act, "the combination of required information and non-required information" may not be misleading.[8]  Relatedly, "any non-required information or representations placed on the product shall not minimize, detract from, or conflict with required information and shall not be false, deceptive, or misleading."[9]

## H&M's False and Misleading Representations

30.     H&M has misrepresented the Products as made with recycled and organic materials throughout the Class Period.

31.     H&M's marketing materials are replete with statements that the Products are made with "recycled" and/or "organic" materials.

32.     H&M labels the Products with a green hangtag that claims that they are made with "recycled" and/or "organic" materials.

---

[7] *Id.*
[8] 16 C.F.R. § 303.16(a).
[9] 16 C.F.R. § 303.16(c).





HM.COM

SHELL
**100%**
**Organic cotton**

LINING
**100%**
**Organic cotton**

EXTERIEUR
**100%**
**Coton biologique**

DOUBLURE
**100%**
**Coton biologique**

**H&M**

OU 11 105749 C15

33. During the Class Period, the "Sustainability" section of H&M's website,

https://www2.hm.com/en_us/sustainability-at-hm.html, contained the following statements that

the Products are made with "recycled," "organic," and "sustainable" materials that are less

harmful and more beneficial to the environment:

- "A promise to ourselves

    Let's face it. **While we love fashion, it has a huge impact on the environment. The industry has to change and someone has to take the lead.**

    **So, let's make that us.**

    Let's see how much more efficiently we can collect and recycle unwanted clothes on a global scale.

    Let's find out how little waste we can create.

    **Let's remove all unnecessary plastic. Let's take away any hazardous chemicals. Let's accelerate innovation of sustainable materials.**

    Let's not settle with being one of the largest buyers of organic cotton in the world, let's make sure all our cotton is kinder to the planet.

    Let's take care of our fashion favourites by repairing and remaking.

    Let's close the loop on fashion.

    Let's keep working for fair jobs and push the boundaries on transparency in the fashion world.

    **Let's make fashion sustainable and sustainability fashionable. Let's write a new promise when these boxes are ticked.**

    Let's change fashion."[10]

- **"Our more sustainable materials**

    We're on a journey towards only using recycled or other more sustainable materials by 2030. When it comes to cotton, which we use the most, we're already there. Scroll down to get savvy on other more sustainable materials we use frequently at H&M.

---

[10] https://www2.hm.com/en_gb/sustainability-at-hm/our-work/lets-change.html (emphasis added) (last accessed 9/1/2023).

**Recycled wool:** Wool is a renewable, natural material. Recycled wool comes from the waste or cut-offs created during clothes production, or from collected garments. By recycling wool, we save raw materials and reduce what ends up in landfills. Win-win!

**Recycled polyester: Recycled polyester is an artificial fibre made from oil-based waste such as old PET bottles or polyester clothing. It's a way more sustainable option than conventional polyester, as we can reuse a material that's already been produced. Using recycled polyester also reduces plastic waste and stops it from ending up in landfills.**

**Recycled plastic:** We get our recycled plastic from PET bottles, shampoo bottles and other plastic containers. This is used to make new products, such as accessories. By repurposing plastic waste, we prevent it from ending up in landfill and doing harm to our planet."[11]

- **Our cotton explained**

Cotton is natural, renewable and biodegradable as well as super-soft on the skin. Pretty much anything you could wish for when it comes to a textile fibre. Unfortunately, it's also a thirsty crop linked to high water and chemical use that affect both the soil and the farmers working in the cotton fields. **That's why all our cotton is now sourced more sustainably.**

**Organic cotton: Organic cotton needs 62% less energy and 91% less water usage compared to conventional cotton.** It's grown without chemical pesticides or fertilisers and contains no genetically modified organisms (GMOs). This leads to improved soil condition, lower greenhouse gas emissions, stronger biodiversity and better health among the cotton growers. **It's better for you, the farmers and the environment.** We're the world's biggest users of organic cotton!

**Recycled cotton:** Old garments and textile leftovers (like worn-out jeans from garment collecting boxes), are ground into fibres, spun into new yarns and woven into new fabrics. **Recycled cotton is great because it stops material from going to landfill and reduces the use of virgin raw material.**"[12]

34.     Based on these made with "recycled" and/or "organic" materials and

"sustainable" representations, reasonable consumers, including Plaintiff, believe that the

Products are made with "recycled" and/or "organic" materials that are less harmful and more

---

[11] https://www2.hm.com/en_gb/sustainability-at-hm/our-work/innovate/all-stars.html (emphasis added) (last accessed 9/1/2023).
[12] https://www2.hm.com/en_gb/sustainability-at-hm/our-work/innovate/our-cotton-explained.html (emphasis added) (last accessed 9/1/2023).

beneficial to the environment. This understanding is reinforced by the Products' labeling, marketing, and advertising which further represents that they are "Green" products which are known to be made from recycled, organic, sustainable, and environmentally friendly materials. However, in spite of the labeling and marketing representations, the Products are not made from any "recycled" and/or "organic" materials because the Products are made with virgin synthetic and non-organic materials that are harmful to the environment.

35. Representing that a product is made with "recycled" and/or "organic" is a statement of fact.

36. Consumers reasonably believe that a product labeled and marketed as made with "recycled" and/or "organic" materials to be made from recycled and/or organic materials.

**The Products Are Not Made from Any "Recycled" and/or "Organic" Materials**

37. H&M's representations that the Products are made with "recycled" and/or "organic" materials are false, misleading, and deceptive because the Products are not made from any "recycled" and/or "organic" materials.

38. Despite claiming that the H&M Products are made with "recycled" and/or "organic" materials, they are all made with virgin synthetic, conventionally grown, and/or non-organic materials. In fact, by H&M's own admission, none of the Products identified in Exhibit A attached hereto are actually made with any recycled fibers, organic fibers, and/or sustainable materials. Exhibit A.

39. H&M's website, https://www2.hm.com/en_us/index.html, contains a URL for each of the Products. Exhibit A ("Product URL" and "Color URLs" columns). The URL for each of the Products contains a drop-down tab entitled, "Materials & suppliers." *See id.* The "Materials & suppliers" drop-down tab for the Products lists the "Composition" and explains the "Materials in this product." *See id.*

14



https://www2.hm.com/en_us/productpage.1003993001.html (last accessed 9/1/2023).



https://www2.hm.com/en_us/productpage.1000194002.html (last accessed 9/1/2023).

40. The "Composition" and "Materials" for each and every one of the Products from Defendant's websites are listed in Exhibit A. *Id.* ("Composition" and "Materials" columns). The H&M Products are all made from virgin synthetic, conventionally grown, and/or non-organic materials. *Id.* H&M admits that the polyester in the Products "is a synthetic fiber made from crude oil (a fossil resource)." *Id.* And H&M admits that the cotton in the Products "is a soft and versatile natural fiber harvested from the cotton plant." *Id.*

41. The H&M App also contains a custom product page for each of the Products. The custom product page for each of the Products contains a drop-down tab also entitled, "Materials & Suppliers" for each of the Products. The "Materials & Suppliers" drop-down tab for the Products in the H&M App lists the "Composition" and explains the "Materials in this product."



42.     H&M also admits on its App that the H&M Products are all made from virgin synthetic, conventionally grown, and/or non-organic materials.  H&M admits on the App that the polyester in the Products "is a synthetic fiber made from crude oil (a fossil resource)."  And

H&M admits that the cotton in the Products "is a soft and versatile natural fiber harvested from the cotton plant."

43.     Moreover, a sampling of these particular H&M Products, including the H&M Satin Resort Shirt and H&M Ankle-length Satin Skirt, have been independently tested and found to contain no "recycled" materials.

44.     Thus, none of the H&M Products are made with "recycled" and/or "organic" materials.  Exhibit A.

45.     Synthetic materials like polyester, a form of plastic derived from oil, shed plastic particles, called microplastics, with wash and wear.  They are a prime source of microplastic pollution, which is especially harmful to marine life.  The Products send microplastics into the oceans from the washing of plastic-based textiles such as polyester and nylon.  Textiles are the largest source of microplastic pollution in the world's oceans.  According to a U.S. Geological Survey, 71% of microplastics found in samples of river water came from textiles.

46.     Additionally, microplastics harm not only wildlife, but also make their way up the food chain to humans, raising a host of health risks.

47.     Further, synthetic, plastic-based materials like polyester are not biodegradable or recyclable, require loads of energy for extraction and processing, and, as H&M admits, are derived from nonrenewable resources.

48.     Conventionally grown cotton is bad for the environment because of its high water consumption and pollution, soil degradation, greenhouse gas emissions, and use of harmful pesticides and fertilizers.

49.     Moreover, non-organic cotton seeds are hugely dependent on chemicals because they are typically treated with fungicides or insecticides and are always genetically modified.

50.    Because the Products are made from virgin plastic-based, synthetic, conventionally grown, and non-organic materials, the H&M Products are not made with "recycled" and/or "organic" materials, rendering H&M's representations that the Products are made with "recycled" and/or "organic" materials false, misleading, and deceptive.

51.    H&M's makes additional representations on its website that confirm its statements that the Products are made with "recycled" and/or "organic" materials are false, misleading, and deceptive.  H&M claims that hundreds of other clothing products that are not included in Plaintiff's claims at this time, which H&M also labels with a green hangtag representing that they are made with "recycled" and/or "organic" materials, are made with recycled and/or organic materials such as recycled polyester, recycled cotton, and organic cotton. Exhibit B.

52.    The URL from H&M's website, https://www2.hm.com/en_us/index.html, for each of the other clothing products also contains a drop-down tab entitled, "Materials & suppliers."  *See id.*  ("Product URL" and "Color URLs" columns).  The "Materials & suppliers" drop-down tab for the other clothing products lists the "Composition" and explains the "Materials in this product."  *See id.*



https://www2.hm.com/en_us/productpage.0881345009.html (last accessed 9/1/2023).



https://www2.hm.com/en_us/productpage.0881994007.html (last accessed 9/1/2023).

53.     The "Composition" and "Materials" for each and every one of the other clothing products from Defendant's website are listed in Exhibit B. *Id.* ("Composition" and "Materials" columns). The other clothing products all contain recycled and/or organic materials. *Id.* H&M states that the recycled polyester in the other clothing products "is polyester made from PET bottles or end-of-life textile waste. The PET bottles or textile waste is mechanically recycled and processed into new yarn." *Id.* H&M also states that the recycled cotton in the other clothing products "is cotton made from textile waste in production or from end-of-life textile waste. The waste is mechanically recycled and spun into new yarn." *Id.* And H&M states that the organic cotton in the other clothing products "is cotton grown without the use of artificial pesticides or fertilizers and contains no genetically modified organisms (GMOs)." *Id.*

54.     Thus, these additional representations confirm that H&M's claims that the Products currently at issue in this lawsuit are made with "recycled" and/or "organic" materials are false, misleading, and deceptive.

55.     H&M is thus aware that the Products do not contain any recycled, organic, and/or sustainable materials but chooses to misrepresent as much on the labels of the Products.

56.     Therefore, the Products give the false and misleading impression that they are made with "recycled" and/or "organic" materials, and that they are less harmful or more beneficial to the environment than what they really are.

**Plaintiff and Reasonable Consumers Were Misled by the Products**

57.     Given that the Products do not contain any recycled and/or organic materials, H&M's representations that they are made with "recycled" and/or "organic" materials are deceptive and misleading.

58.     By misleadingly and deceptively labeling and marketing the Products, as described herein, H&M sought to take advantage of consumers' desire for true clothing products that are made with recycled, organic, sustainable, and environmentally friendly materials. H&M has done so at the expense of unwitting consumers and H&M's lawfully acting competitors, over whom H&M maintains an unfair competitive advantage.

59.     A review of consumer sales between 2013 and 2018 by researchers at the Stern Center for Sustainable Business, of New York University, found that products that were highlighted as sustainable would sell much faster than products which were not.[13] So, by giving the impression that they are an environmentally conscious company, and by selling products that are marketed as made with "recycled" and/or "organic" materials, H&M is creating a massive advantage in terms of sales and profit. This is what lies at the heart of its sustainable style focus.

60.     The made with "recycled" and/or "organic" materials representations were and are material to reasonable consumers, including Plaintiff, in making purchasing decisions.

61.     Plaintiff relied on H&M's misrepresentations, described herein, in making the decision to purchase the Products.

62.     At the time Plaintiff purchased the Products, Plaintiff did not know, and had no reason to know, that the Products' labeling and advertising were false, misleading, deceptive, and unlawful as set forth herein.

63.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is made with "recycled" and/or "organic" materials, especially at the point of

---

[13] "Research on IRI Purchasing Data (2013-2018)," NYU Stern (March 2019). [ONLINE] Available at: https://www.stern.nyu.edu/sites/default/files/assets/documents/NYU%20Stern%20CSB%20Sustainable%20Share%20Index%E2%84%A2%202019.pdf (last accessed 9/1/2023).

sale. Consumers would not know the true nature of the clothing's materials merely by reading the products' label.

64.     Discovering that the Products are not made with "recycled" and/or "organic" materials because they are not made from recycled and/or organic materials that are actually less harmful and more beneficial to the environment requires an investigation and knowledge beyond that of the average consumer. That is why, even though all of the Products' materials are identified on the Products' labeling affixed to the inside of the garments, the reasonable consumer would not understand – nor are they expected to understand - that these materials are not recycled and/or organic.

65.     Moreover, the reasonable consumer is not expected or required to scour the Products' materials in order to confirm or debunk H&M's prominent claims, representations, and warranties that the Products are made with "recycled" and/or "organic" materials.

66.     H&M materially misled and failed to adequately inform reasonable consumers, including Plaintiff, that the Products are not made with recycled and/or organic materials. A reasonable consumer understands H&M's made with "recycled" and/or "organic" materials claims to mean exactly what H&M proclaims them the mean – that the Products are made from recycled and/or organic materials.

67.     H&M's representations that the Products are made with "recycled" and/or "organic" materials induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products. Plaintiff and Class Members relied on H&M's false and misleading misrepresentations in purchasing the Products at some premium price above comparable alternatives that are not represented to be made with "recycled" and/or "organic" materials. If not for H&M's misrepresentations, Plaintiff and Class Members would not have

been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of H&M's misrepresentations.

68. H&M knew that consumers will pay more for a product labeled made with "recycled" and/or "organic" materials, and intended to deceive Plaintiff and putative class members by marketing and labeling the Products as purportedly made with "recycled" and/or "organic" materials.

69. H&M has profited enormously from its false and misleading representations that the Products are made with "recycled" and/or "organic" materials. The purpose of this action is to require H&M to undertake a corrective advertising campaign and to provide consumers with monetary relief for H&M's deceptive and misleading product claims.

70. Plaintiff would not have purchased the Products if he had known the truth. Accordingly, based on H&M's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

71. It is possible, however, that Plaintiff would purchase the Products in the future if they were properly labeled, and/or the Products complied with the labeling and advertising statements. Specifically, Plaintiff would like to purchase the Products again if the Products were made from "recycled" and/or "organic" materials.

## CLASS ACTION ALLEGATIONS

72. Plaintiff and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

73. Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and all persons in the United States, who

within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("National Class" or the "Class").

74.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and seeks to represent a subclass defined as all Missouri residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("Missouri Subclass").

75.     Excluded from the Classes:

    i.    Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees;

    ii.    Counsel and members of the immediate family of counsel for Plaintiff herein;

    iii.    The judge and staff to whom this case was assigned, and any member of the judge's immediate family;

    iv.    Individuals asserting claims for personal injury; and

    v.    Persons or entities that purchase the Products for sole purposes of resale.

76.     Plaintiff reserves the right to revise the class definitions with greater specificity or division after having an opportunity to conduct discovery.

77.     The proposed Classes meet all requirements for class certification.  The members of the Classes satisfy the numerosity standards.  Plaintiff has a good faith belief that there are tens of thousands of Class Members.  Defendant has sold millions of units of the Products.  As a result, joinder of all Class Members in a single action is impracticable.  Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

78.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, the H&M Products in connection with Defendant's false, misleading, and deceptive statements.  Plaintiff and Class Members have all sustained damages in that each paid the purchase price for the Products and sustained damages from Defendant's wrongful conduct.

79.     Plaintiff will fairly and adequately protect the interests of the Class and the Subclass and is an adequate representative of the Class and Subclass because he is a member of the Class and the Subclass.  Plaintiff has no interests which conflict with the interests of the members of the Class and Subclass he seeks to represent.  The interests of members of the Class and Subclass will be fairly and adequately protected by Plaintiff and his undersigned counsel, who have extensive experience prosecuting complex class action litigation.

80.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Common questions of law and/or fact exist as to all members of the Class, which predominate over any questions affecting solely individual members of the Class.  The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

    a.  Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    b.  Whether Defendant's conduct was unfair and/or deceptive;

    c.  Whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the classes;

d.  Whether Defendant breached warranties to Plaintiff, the Class, and the Subclass;

e.  Whether Plaintiff and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages; and

f.  Whether injunctive, declaratory, and/or other equitable relief is warranted.

81.  With respect to the Missouri Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the Missouri Merchandising and Practices Act.

82.  These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual members of the Class and Subclass. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Classes.

83.  A class action is superior, with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by members of the Class and the Subclass would impose heavy burdens upon the courts and Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and/or fact common to the Class and the Subclass. In addition, the prosecution of separate actions by members of the Class and the Subclass would establish incompatible standards of conduct for any party opposing the Class and the Subclass. Also, the prosecution of separate actions by individual members of the Class and the Subclass, if fully adjudicated, as a practical matter, would be dispositive of the interests of the other members of the Class and the Subclass not parties to that particular adjudication and, as such, would substantially impair or impede upon those members of the Class and the

Subclass' abilities to protect their interests. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

84.     The interest of members of the Class and the Subclass in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class and Subclass have a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for members of the Class and the Subclass, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against Defendant. Plaintiff does not anticipate any difficulty in the management of this action as a class action.

## COUNT I
### Violation of Missouri's Merchandising Practices Act ("MMPA")
### Deception, 15 CSR 60-9.020
### (As to the Missouri Subclass Only)

85.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

86.     Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

87.     The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*.

88.     Defendant's actions alleged herein violated, and continue to violate, the MMPA.

89.     Defendant is a "person" within the meaning of the MMPA, at Missouri Revised Statutes § 407.010(5).

90.    The goods purchased from Defendant are "merchandise" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(4).

91.    The transactions resulting in purchases of goods from Defendants in Missouri are a "sale" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(6).

92.    Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the H&M Products in violation of Mo. Rev. Stat. § 407.020, which states in relevant part as follows:

> 407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. ... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

93.    Plaintiff and Missouri Subclass Members purchased the H&M Products, products that were falsely and deceptively represented as made with "recycled" and/or "organic" materials as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiff suffered economic damages, in that the products he and other Missouri Subclass Members purchased were worth less than the products they thought they had purchased had Defendant's representations been true.

94.    Defendant's misrepresentations regarding the H&M Products are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Missouri Subclass.

95.    Plaintiff and Missouri Subclass Members purchased the H&M Products for personal, family, or household purposes.

96. Plaintiff and Missouri Subclass Members reasonably and justifiably relied on Defendant's misleading and fraudulent representations about the H&M Products when purchasing them.

97. At all times relevant herein, Plaintiff was unaware that the H&M Products were not made with "recycled" and/or "organic" materials, and that they were not made from materials that are less harmful and more beneficial to the environment.

98. Defendant's marketing materials for the H&M Products do not disclose that the Products are not made with "recycled" and/or "organic" materials.

99. Defendant's green hangtag labeling for the H&M Products does not disclose that the Products are not made with "recycled" and/or "organic" materials.

100. Defendant's representations that the H&M Products are made with ""recycled" and/or "organic" materials are a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

101. The foregoing acts and practices of Defendant constituted unfair and unlawful practices, and deceptive conduct, in violation of the Missouri Merchandising Practices Act.

102. As a direct proximate result of the above-described practices, Plaintiff and the Missouri Subclass Members suffered ascertainable loss of money due to the purchasing of the H&M Products.

103. Plaintiff and Missouri Subclass Members have suffered an ascertainable loss caused by Defendant because they would not have purchased the H&M Products or would have paid significantly less for the Products, had they known that Defendant's conduct was misleading and fraudulent.

104.     Appropriate injunctive relief is necessary to prevent Defendant's MMPA violations from continuing.  If Defendant's violations of the MMPA are not stopped by such injunctive relief, Plaintiff and the members of the Missouri Subclass will continue to suffer injury.

105.     Defendant's misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

106.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Missouri Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing the Products.

107.     Plaintiff and other members of the Missouri Subclass lost money or property as a result of Defendant's violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not made with "recycled" and/or "organic" materials; (b) they paid a substantial price premium compared to other household clothing products due to Defendant's misrepresentations and deceptions; and (c) the Products do not have the characteristics, uses, or benefits as promised.

108.     Plaintiff and the Missouri Subclass seek all monetary and non-monetary relief allowed by law, including treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

109.     WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT II**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Misrepresentation, 15 CSR 60-9.070**
**(As to the Missouri Subclass Only)**

110. Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

111. Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

112. "A misrepresentation is an assertion that is not in accord with the facts." 15 CSR 60-9.070.

113. As described further herein, whether a product is made with "recycled" and/or "organic" materials is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

114. Defendant's representations that the Products are made with "recycled" and/or "organic" materials – when the Products are not made from recycled and/or organic materials – is a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

115. Defendant's representations that the Products are made with "recycled" and/or "organic" materials is a material misrepresentation.

116. Defendant's misrepresentations were material because they were likely to deceive reasonable consumers.

117. Plaintiff purchased the Products for personal, family, or household purposes.

118. Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

119. WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT III
### Violation of Missouri's Merchandising Practices Act ("MMPA")
### Concealment or Omission of any Material Fact, 15 CSR 60-9.110
### (As to the Missouri Subclass Only)

120. Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

121. Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

122. The MMPA prohibits as an unlawful practice the act, use or employment of the "concealment, suppression or omission of any material fact" in connection with the sale or advertisement of any merchandise in trade or commerce. §407.020.1, RSMo.

123. A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner." 15 CSR 60-9.010(1)(C).

124. "Concealment of a material fact" is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers." 15 CSR 60-9.110(1).

125. "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR 60-9.110(3).

126. Defendant's actions as alleged herein constitute the concealment and omission of material facts.

127.    Among other things, Defendant concealed and omitted the material facts that the Products are not made with "recycled" and/or "organic" materials.

128.    As described further herein, the representation that a product is made with "recycled" and/or "organic" materials is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

129.    Defendant's green hangtag labeling, marketing, and advertising for the Products does not disclose that the Products are not made with "recycled" and/or "organic" materials.

130.    As described further herein, whether a product is made with "recycled" and/or "organic" materials is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

131.    Defendant's failure to disclose the fact that the Products are not made with "recycled" and/or "organic" materials was a violation of the Missouri Merchandising Practices Act and was a material omission.

132.    Plaintiff purchased the Products for personal, family, or household purposes.

133.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

134.    WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT IV**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Half-Truths, 15 CSR 60-9.090**
**(As to the Missouri Subclass Only)**

135.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

136. Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

137. A half-truth misrepresentation as defined in the MMPA occurs when "any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading."  15 CSR 60-9.090.

138. A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."  15 CSR 60-9.010(1)(C).

139. "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR 60-9.110(3).

140. Defendant's actions as alleged herein constitute the concealment and omission of material facts.

141. Among other things, Defendants concealed and omitted the material facts that the Products were not made with recycled and/or organic materials.

142. As described further herein, the representation that a product is made with "recycled" and/or "organic" materials is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

143.     Defendant's green hangtag labeling, marketing, and advertising for the Products does not disclose that the Products are not made with "recycled" and/or "organic" materials.

144.     As described further herein, whether a product is made with "recycled" and/or "organic" materials is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

145.     Defendant's failure to disclose the fact that the Products are not made with "recycled" and/or "organic" materials was a violation of the MMPA, as further stated herein, and was a material omission.

146.     Plaintiff purchased the Products for personal, family, or household purposes.

147.     Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

148.     WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT V**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Unfair Practice, 15 CSR 60-8.020**
**(As to the Missouri Subclass Only)**

149.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

150.     Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

151.     An unfair practice as defined in the MMPA is any practice which "offends any public policy as it has been established by the Constitution, statutes or common law of this state,

*or by the Federal Trade Commission, or its interpretive decisions*." 15 CSR 60-8.020 (emphasis added).

152. Additionally, Defendant's marketing, advertising, and labeling of the Products, as alleged herein, violates the MMPA, § 407.010 *et. seq.*

153. Defendant's actions as alleged herein constitute an unfair practice under the MMPA.

154. Here, Defendant's labeling, marketing, and advertising of the Products, as alleged herein, violates the Guides for the Use of Environmental Marketing Claims, promulgated at 16 C.F.R. Part 260 ("Green Guides"), among others as set forth in this Complaint.

155. Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit." 16 C.F.R. § 260.4. By misrepresenting that the Products are made with "recycled" and/or "organic" materials as described above, Defendant is violating 16 C.F.R. § 260.4.

156. Further, under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is made of recycled content. Recycled content includes recycled raw material, as well as used, reconditioned, and re-manufactured components." 16 C.F.R. § 260.13(a). And "[i] is deceptive to represent, directly or by implication, that an item contains recycled content unless it is composed of materials that have been recovered or otherwise diverted from the waste stream, either during the manufacturing process (pre-consumer), or after consumer use (post-consumer)." *Id.*at § 260.13(b). By misrepresenting that the Products are made with "recycled" materials as described above, Defendant is violating 16 C.F.R. § 260.13.

157.    As alleged in detail throughout the Complaint, Defendant's labeling, marketing, and advertising of the Products as made with "recycled" and/or "organic" materials and not made from materials that are less harmful and more beneficial to the environment, violates, and is therefore not in compliance with, the Federal Trade Commission's revised Guides for the Use of Environmental Marketing Claims, 16 C.F.R. Part 260 (Green Guides).

158.    The Green Guides also require marketers to ensure that their claims are supported by a reasonable basis prior to making the claim.  16 C.F.R. § 260.2.  A reasonable basis is defined as competent and reliable scientific evidence, such as "tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results." *Id.*  "Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true." *Id.*

159.    Defendant's unlawful conduct also violates the Textile Act under 16 C.F.R. § 303.16(a), because "the combination of required information and non-required information" in the marketing, advertising, and labeling of the Products is misleading.  And Defendant's conduct further violates 16 C.F.R. § 303.16(c), which states that "any non-required information or representations placed on the product shall not minimize, detract from, or conflict with required information and shall not be false, deceptive, or misleading."  Defendant's false, deceptive, and misleading marketing, advertising, and labeling the Products as made with "recycled" and/or "organic" materials despite the Products not being made with ""recycled" and/or "organic" materials violates, and is therefore not in compliance with, the Textile Act.

160.     Defendant's conduct further violates Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or effecting commerce.  By misrepresenting that the Products are made from recycled and/or organic materials, Defendant is violating Section 5 of the FTC Act.

161.     Defendant's packaging, labeling, marketing, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

162.     Defendant knew or should have known of their unlawful conduct.

163.     There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein.  Defendant should have complied with the law in its labeling, marketing, and advertising or otherwise manufactured and sold products that are truly made from recycled and/or organic materials.

164.     All of the conduct alleged herein occurred and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of ongoing conduct repeated on thousands of occasions daily.

165.     Plaintiff purchased the Products for personal, family, or household purposes.

166.     Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

167.     WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT VI**
**Breach of Warranty**
**(As to the National Class and the Missouri Subclass)**

168.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

169.     Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendant.

170.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented the Products as made with "recycled" and/or "organic" materials.  Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing the Products as made with "recycled" and/or "organic" materials.  The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

171.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

172.     The Products do not conform to the express warranty because they are not made with any "recycled" and/or "organic" materials.

173.     Defendant was provided notice of these issues by numerous public complaints and inquiries concerning its use of virgin synthetic, non-organic, and conventionally grown materials in its products.

174.     Additionally, prior to the filing of this Complaint, Plaintiff timely notified Defendant of these breaches by letters via USPS. Priority Mail on September 22, 2023. Plaintiff's letters were received by Defendant on September 25, 2023.

175.     Defendant has had a reasonable opportunity to cure its breach of written warranties and any additional opportunity to cure would be unnecessary and futile.

176.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' virgin synthetic, non-organic, and conventionally grown materials in the Products; (b) they paid a substantial price premium based on Defendants' express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT VII
### Breach of Implied Warranty of Merchantability
### (As to the National Class and the Missouri Subclass)

177.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

178.     Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendant.

179.     Defendant is a merchant with respect to the sale of clothing products including the Products.  Defendant is the designer, manufacturer, marketer, distributor, and/or seller of the Products.  Therefore, a warranty of merchantability is implied in every contract for sale of the Products to Plaintiff and other consumers.

180.     In representing on the green hangtag on the Products that the Products are made with "recycled" and/or "organic" materials, Defendant has provided a promise or affirmation of fact to Plaintiff and other consumers.

181.     However, the Products do not conform to the promises or affirmations of fact, as the Products are not made from any recycled and/or organic materials.

182.     Therefore, Defendant has breached its implied warranty of merchantability in regard to the Products.

183.     If the Plaintiff and members of the Classes had known that the Products do not conform to Defendants' promises or affirmations of fact, they would not have purchased the Product or would not have been willing to pay the premium price associated with Product. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

### COUNT VIII
### Unjust Enrichment
### (As to the National Class and the Missouri Subclass)

184.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

185.     Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

186.     At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

187.     Plaintiff and members of the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality,

nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

188.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

189.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

**COUNT IX**
**Negligent Misrepresentation**
**(As to the National Class and the Missouri Subclass)**

190.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

191.    Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendant.

192.    Defendant has marketed the Products in a manner indicating that the Products are made with "recycled" and/or "organic" materials. However, the Products are not made with "recycled" and/or "organic" materials, because they are made from virgin synthetic, conventionally grown, and/or non-organic materials. Therefore, Defendant has made misrepresentations as to the Products.

193.    Defendant's representations regarding the Products are material to a reasonable consumer because they relate to the composition of the Products purchased by consumers. A

reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

194.    At all relevant times when such misrepresentations were made, Defendant knew or has been negligent in not knowing that the representations were false and misleading. Defendant had no reasonable grounds for believing its representations were not false and misleading.

195.    Defendant intends that Plaintiff and other consumers rely on the representations made about the Products, as the representations are made prominently on the Products, and are reinforced throughout Defendant's marketing and advertising campaigns.

196.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

197.    Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, premiums paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT X**
**Fraud**
**(As to the National Class and the Missouri Subclass)**

198.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

199. Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendant.

200. As discussed above, Defendant has willfully, falsely, and knowingly provided Plaintiff and Class members with false or misleading material information about the Products and failed to disclose material facts about the Products, including but not limited to the fact that the Products are not made with "recycled" and/or "organic" materials because they are made from virgin synthetic, conventionally grown, and/or non-organic materials. Despite this, Defendant continues to intentionally represent that the Products are made with "recycled" and/or "organic" materials. Therefore, Defendant has made, and continues to make, misrepresentations as to the Products.

201. The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Products.

202. Defendant's misrepresentations are material (*i.e.*, the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition of the Products.

203. Defendant knew or recklessly disregarded the fact that the Products are not made with "recycled" and/or "organic" materials because they are not made from virgin synthetic, conventionally grown, and/or non-organic materials.

204. Defendant intends that consumers rely on these representations, as the representations are made prominently on the Products, and are reinforced throughout Defendant's marketing and advertising campaigns.

205. Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

206. Therefore, as a direct and proximate result of Defendant's fraudulent actions, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, premiums paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

207. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the nationwide Class, and the Missouri Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as National Class representatives; naming Plaintiff as Missouri Subclass representative; and naming Plaintiff's attorneys as Class Counsel to represent the National Class and Missouri Subclass members;

b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. For an order finding in favor of Plaintiff, the Nationwide Class and the Missouri Subclass on all counts asserted herein;

d. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

e. For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and order Defendant to engage in corrective action;

f. For an order requiring Defendant to undertake a corrective advertising campaign;

g. For prejudgment and postjudgment interest on all amounts awarded;

h. For injunctive relief as pleaded or as the Court may deem proper;

i. For an order awarding Plaintiff and the Class and Missouri Subclass their reasonable attorneys' fees and expenses and costs of suit; and

j. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

208. Plaintiff demands a trial by jury on all issues so triable.

Dated: November 15, 2023

Respectfully submitted,

Orlowsky Law, LLC

/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #MO57387
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax: (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs

Goffstein Law, LLC


/s/ Adam M. Goffstein
Adam M. Goffstein, #MO45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs