UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RANDALL SALLY,                          )
on behalf of himself and all others     )
similarly situated,                     )
                                        )
            Plaintiff(s),               )
                                        )
v.                                      )    No. 4:23-cv-01451-CMS
                                        )
H&M HENNES & MAURITZ LP,                )
                                        )
            Defendant.                  )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant H&M Hennes & Mauritz LP's Motion to Dismiss and/or Strike Plaintiff's Second Amended Complaint. (Doc. 39). For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. The Motion to Strike is **GRANTED IN PART AND DENIED IN PART.**

### PLAINTIFF'S COMPLAINT

Plaintiff purchased a Satin Resort Shirt Bright Blue and an ankle-length Satin Skirt Black from an H&M store in St. Louis County, Missouri. (Doc. 37 at 4). H&M labeled the shirt with a green hangtag that stated the shirt was made with 56% recycled polyester. (Doc. 37 at 4-6). The skirt contained a similar green hangtag that represented that the skirt was made with 55% recycled polyester.

1

(Doc. 37 at 7-9). Plaintiff commissioned a "well-known accredited laboratory that independently tested" both products. (Doc. 37 at 7-9). According to the results, neither product contained any recycled polyester. (Doc. 37 at 7-9).

According to Plaintiff, H&M admits that these two items of clothing are not made with recycled or organic materials on its own website. (Doc. 37 at 22) (containing a screenshot of the shirt's description that states the shirt is 100% polyester, a "synthetic fiber made from crude oil (a fossil resource)); (Doc. 37 at 23) (containing a screenshot of the skirt with the exact same statements made). Plaintiff catalogued the materials and composition of every single item listed on the H&M website. (Doc. 37, Ex. A). And Plaintiff also created his own spreadsheet of every H&M clothing item for which H&M allegedly misrepresents the composition and materials. (Doc. 37, Ex. C).

Plaintiff claims this is part of a pattern of H&M's false and misleading statements about their recycled or organic products. (Doc. 37 at 14). At some point, H&M's website's Sustainability page stated, "Let's remove all unnecessary plastic. Let's take away any hazardous chemicals. Let's accelerate innovation of sustainable materials… Let's make fashion sustainable and sustainability fashionable. Let's write a new promise when these boxes are ticked." (Doc. 37 at 17). To that end, the webpage also stated that H&M uses "more sustainable materials." (Doc. 37 at 18). H&M described recycled polyester as "an artificial

2

fibre made from oil-based waste such as old PET bottles or polyester clothing. It's a way more sustainable option than conventional polyester, as we can reuse a material that's already been produced. Using recycled polyester also reduces plastic waste and stops it from ending up in landfills." (Doc. 37 at 18).

Similarly, H&M also explained that "all our cotton is now sourced more sustainably." (Doc. 37 at 18). The webpage stated that "[o]rganic cotton needs 62% less energy and 91% less water usage compared to conventional cotton" and is therefore "better for you, the farmers and the environment." (Doc. 37 at 18). H&M's website also claimed, "Recycled cotton is great because it stops material from going to landfill and reduces the use of virgin raw material." (Doc. 37 at 19).

H&M launched an environmental project named "bottle2fashion project" with the goal of "transforming plastic bottle waste from across the islands of Indonesia into recycled polyester." (Doc. 37 at 19). Bottle2fashion collected and recycled over 7.5 million PET bottles in 2021. (Doc. 37 at 19). H&M ran an ad celebrating this fact on Facebook, and claimed on Instagram that "H&M is one of the world's biggest users of recycled polyester made from PET bottles." (Doc. 37 at 20).

In total, Plaintiff brings ten claims against Defendant. Plaintiff's first five claims allege five different theories of liability under the Missouri Merchandising Practices Act (MMPA): deception (Count I); misrepresentation (Count II);

concealment or omission of any material fact (Count III); half-truths (Count IV);

and unfair practice (Count V). (Doc. 37 at 42-53). Plaintiff also alleges five

Missouri common law claims: breach of warranty (Count VI); breach of implied

warranty of merchantability (Count VII); unjust enrichment (Count VIII); negligent

misrepresentation (Count IX); and fraud (Count X). (Doc. 37 at 53-59).

Plaintiff also purports to bring his claims on behalf of a class of individuals

who purchased H&M's recycled and organic products for personal, family, or

household use. (Doc. 37 at 38). Plaintiff proposes a subclass of Missouri residents

for his MMPA claims. (Doc. 37 at 39).

H&M filed a motion to dismiss Plaintiff's Second Amended Complaint

and/or Strike Plaintiff's Amended Complaint. (Doc. 39).  H&M's arguments will

be addressed *seriatim* under each applicable count.

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*,

783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). The plaintiff must allege more than "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *K.T. v.

Culver-Stockton College*, 765 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Iqbal*, 556

U.S. at 678).  "'A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012)). The Court assumes all the complaint's factual allegations are true and construes all reasonable inferences in the plaintiff's favor. *Unesko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (citing *Retro Television, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012)). The Court may also consider documents attached to the complaint and materials necessarily embraced by the pleadings. *Id.* at 512. "Statutory interpretation is a question of law", *Roubideaux v. North Dakota Dept. of Corrections and Rehab.*, 570 F.3d 966, 972 (8th Cir. 2009) (quoting *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006)), that may be resolved on a motion to dismiss. *See Ark. Times LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trs.*, 37 F.4th 1386, 1392 (8th Cir. 2022) (en banc).

"Claims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s heightened pleading standard." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017)). Plaintiff's other Missouri claims also contain an element of "falsity" or "misrepresentation" and are therefore subject to Rule 9(b). *See Lizama v. H&M Hennes & Mauritz LP*, 2023 WL 3433957 (E.D. Mo. May 12, 2023). "In

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires a plaintiff to state the "who, what, where, when, and how" of the alleged fraud. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

### General MMPA Law

To establish a violation of the Missouri Merchandising Practices Act (MMPA), Missouri law requires a plaintiff to establish that he (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and that he (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices Act. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007). The MMPA declares unlawful any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." § 407.020.1, RSMo 2016. And when the claim accrued after August 28, 2020, the plaintiff must also "establish (a) that he acted as a reasonable consumer would in light of all circumstances; (b) that the method, act, or practice declared unlawful would cause a reasonable person to enter into the transaction that resulted in damages; and (c) individual damages with sufficiently definitive and objective evidence to allow the

loss to be calculated with a reasonable degree of certainty." *Bell v. Annie's, Inc.*, 673 F.Supp.3d 993, 998 (E.D. Mo. 2023).

### Plaintiff's Claims are Dismissed to the Extent They Rely on H&M's Website and Marketing Materials.

Plaintiff's Second Amended Complaint fails to identify the "what" and "when" aspects of H&M's representations on its website. Plaintiff's Second Amended Complaint states, "Plaintiff relied on H&M misrepresentations, described herein, in making the decision to purchase the products." (Doc. 37 at 36). But Plaintiff never identifies what "misrepresentations" he saw and relied on, or when he saw them. This kind of "catchall" pleading fails to satisfy Rule 9(b)'s particularity requirement. *See Boone v. PepsiCo, Inc.*, 653 F.Supp.3d 635, 647 (E.D. Mo. 2023) ("Plaintiff's vague allegations of the false statements on the website and in the marketing materials does not sufficiently identify the source of the misrepresentations such that Defendants may properly prepare their case); *Boris v. Wal-Mart Stores, Inc.*. 35 F.Supp.3d 1163, 1175 (C.D. Cal 2014) ("At best, the FAC invites the reader to infer Girard viewed these webpages, but this is insufficient to state a claim: absent an express allegation that Girard viewed the misleading content, there can be no reliance and the claim fails under Rules 8(a) and 9(b)); *Ellis v. Nike USA, Inc.*, 2024 WL 1334805 at *4 ("While Plaintiff details numerous things Defendant has stated on its website, 'advertisements,' and 'social media,' [ ] Plaintiff never once alleges what specific representations she saw"),

7

aff'd, 158 F.4th 932 (8th Cir. 2025). Plaintiff's claims are DISMISSED WITHOUT PREJUDICE under Rule 9(b) to the extent the claims rely on H&M's internet marketing. Therefore, only Plaintiff's claims relating to the representation of H&M's physical green hangtags remain.

### Counts I and II Set forth a Plausible Basis for Relief.

H&M argues that Counts I and II—Plaintiff's deception and misrepresentation claims under the MMPA—should be dismissed because H&M "accurately states the composition of its products" and "H&M's products are made with the exact materials that it represents to consumers." (Doc. 40 at 10).  Plaintiff and H&M offer two different versions of the composition of Plaintiff's clothing purchases. Plaintiff claims the clothes contain no recycled cotton and polyester; H&M claims they do. At this stage of litigation, the Court is required to assume all the complaint's factual allegations are true and to construe all reasonable inferences in the plaintiff's favor. *Unesko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (citing *Retro Television, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012)).

At other points in its motion to dismiss, H&M appears to argue that Plaintiff's claim that tests can differentiate between organic and non-organic materials is implausible. (Doc. 40 at 18) (arguing that Plaintiff's assertion that he has independently tested the clothing items is a "logical impossibility."). But none

of H&M's cited materials support this argument. The cited affidavit offered by Lauren Riezman, H&M's Regional Head of Communications, does not state that testing cannot tell the difference between organic and non-organic materials. (Doc. 40-2 at 3) (H&M uses two different ways to certify materials as being recycled, the fully certified supply chain system and the internal verification system… With respect to the former, H&M is brand-certified by the Textile Exchange, a non-profit industry organization that provides accreditation upon verification that, at every part of the supply chain, the contents for recycled materials are present and accurate… With respect to the latter, H&M directly samples products from its manufacturers to confirm that the textiles contained therein are traceable to specific textile manufacturers.").

On the other hand, Plaintiff alleges that testing can identify whether the materials are organic or non-organic. Plaintiff claims that "independent testing of a sampling of these particular other clothing products that are not included in Plaintiff's claims at this time confirms that the recycled polyester in these other clothing products comes from PET bottles." (Doc. 37 at 34-35). Plaintiff has plausibly alleged MMPA violations in Counts I and II, and H&M's motion to dismiss on this ground is DENIED.

**Counts III and IV Set Forth a Plausible Basis for Relief.**

H&M further argues that Plaintiff's Concealment or Omission of any Material Fact (Count III) and Plaintiff's Half-Truths (Count IV) should be dismissed because Plaintiff's Second Amended Complaint relies solely on information that H&M provides consumers. (Doc. 40 at 16). Because an omission is only actionable under the MMPA when there is a "failure by a person to disclose material facts known to him/her," H&M argues, a defendant cannot have committed an actionable MMPA omission for the statements they do make. (Doc. 40 at 16). Neither party cites any case law supporting its position, nor does either party show how its position is supported by the MMPA's text and accompanying regulations. For these reasons, the Motion to Dismiss Counts III and IV on these grounds is DENIED.

### Count V Sets Forth a Plausible Basis for Relief.

The MMPA declares unlawful the use of any "unfair practice" "in connection with the sale or advertisement of any merchandise." § 407.020(1), RSMo 2016. An "unfair practice is any practice which" "[o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions... ." 15 CSR 60-8.020(1)(A).

In pertinent part, Plaintiff's Second Amended Complaint alleges that H&M's clothing labels violate the Green Guides promulgated by the Federal Trade

Commission. 16 C.F.R. § 260.13(a) provides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is made of recycled content. Recycled content includes recycled raw material, as well as used, reconditioned, and re-manufactured components." As stated previously, Plaintiff claims that H&M misrepresented that the clothing items he purchased were made of organic materials. This allegation, if true, falls squarely under 16 C.F.R. § 260.13(a). Therefore, to the extent that Plaintiff's allegations relate to the labeling on Plaintiff's specific pieces of clothing, H&M's motion to dismiss is DENIED.

### The MMPA is not Preempted By Federal Law.

H&M finally argues that Plaintiff's MMPA claims should be dismissed because the Green Guides and the FTC Act preempt the MMPA. (Doc. 40 at 20). "The general law of preemption is grounded in the Constitution's command that federal law shall be the supreme Law of the Land." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015) (quotation omitted).  Congress can preempt state law in three ways: "(1) expressly though statutory language like a preemption clause; (2) implicitly when a state law 'conflicts with' or stands as an obstacle to federal law; or (3) implicitly by 'occupying a legislative field,' leaving no room for state law." *WinRed v. Ellison*, 59 F.4th 934, 941 (8th Cir. 2023) (citation modified).

A defendant may raise the affirmative defense of preemption at the motion to dismiss stage. *Dougherty v. Source Nats., Inc.*, 148 F. Supp. 3d 831, 835 (E.D. Mo. 2015). As the party raising the affirmative defense of federal preemption, [the defendant] bears the burden of proof that [a plaintiff's] claims are preempted. *Uhrhan v. B&B Cargo, Inc.*, 2020 WL 4501104 at * 1 (E.D. Mo. Aug. 5, 2020) (citing *Hughs v. Union Pac. R.R. Co.*, No. 5:15-06079-CV-RK, 2017 WL 1380480, at *1 (W.D. Mo. Apr. 14, 2017)).

Beyond citing the fact that the Green Guides and FTC act provide no private cause of action, H&M does not identify which of the three types of preemption apply. Because H&M's affirmative defense of preemption amounts to only a legal conclusion, the motion to dismiss on this ground is DENIED.

### Counts VI-X Set Forth a Plausible Basis for Relief.

H&M argues that Plaintiff's Counts VI through VIII should be dismissed because they are "based on the same deficient theory of deception as his MMPA claims." (Doc. 40 at 20). Because Plaintiff has adequately pleaded his MMPA claims with regard to H&M's hangtags, the motion to dismiss is similarly DENIED as to Counts VI-VIII.

H&M also argues that Plaintiff's Counts IX and X should be dismissed because "Plaintiff fails to allege any misrepresentation or omission by H&M." (Doc. 39 at 2). Both Count IX and X allege that H&M misrepresented that the

12

products were made of organic cotton or polyester. (Doc. 39 at 57). The motion to dismiss is DENIED on this ground.

### Defendant's Motion to Strike is Granted In Part.

*Plaintiff does not have standing to bring claims as to any item he did not purchase.*

To establish Article III standing, a plaintiff must demonstrate: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the injury was caused by the defendant, and (3) the injury would likely be redressed by the requested judicial relief. *Thole v. U.S. Bank N.A*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). At the pleading stage, the plaintiff must "'clearly… allege facts demonstrating each element.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

Plaintiff does not have standing to proceed with any claims as to H&M products he did not purchase. To put it colloquially, standing asks, "What's it to you*?" Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). In order to satisfy the "injury in fact" requirement, a plaintiff must plead facts showing that he

13

suffered an injury that is "concrete, particularized, and actual or imminent."
*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting
*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (citation
modified)). For an injury to be "particularized," it must "affect the plaintiff in a
personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

In his complaint, Plaintiff identifies a "loss of money due to the purchasing
of the H&M products" and that he would "not have purchased the H&M Products
or would have paid significantly less for the Products" if not for H&M's alleged
misrepresentations (Doc. 44). An individual is "neither personally nor actually
harmed as to" products he did not purchase. *Kelly v. Cape Cod Potato Chip Co.*, 81
F.Supp.3d 754, 763 (W.D. Mo. 2015). Because Plaintiff was not injured in any way
by products he did not purchase, Plaintiff does not have standing to bring an
MMPA claim related to those products. *Id.*; *Smith v. Atkins Nutritionals, Inc.*, 2018
WL 9868591 (W.D. Mo. May 8., 2018).

"In a class action, the plaintiff seeking to represent a class must establish
that she, personally, has standing to bring the cause of action. If the plaintiff cannot
maintain the action on her own behalf, she may not seek such relief on behalf of
the class." *Kelly*, 81 F.Supp.3d at 763 (citing *O'Shea v. Littleton*, 414 U.S. 488, 493
(1974)). Therefore, H&M's motion to strike Plaintiff's class allegations is

GRANTED. Plaintiff's proposed class is limited to the two products that Plaintiff purchased: Satin Resort Shirt Bright Blue and an ankle-length Satin Skirt Black.

*Plaintiff Has Standing to Pursue Injunctive Relief.*

As part of his Prayer for Relief, Plaintiff requests that this Court grant "injunctive relief as pleaded or as the Court may deem proper[.]" (Doc. 37 at 60). As part of this request, Plaintiff seeks "an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and order Defendant to engage in corrective action." (Doc. 37 at 60). And Plaintiff claims that H&M continues to use misleading hangtags on its products. (Doc. 37 at 53).

"In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm. *Park v. Forest Service of U.S.*, 205 F.3d 1034, 1037 (2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–105 (1983)). "It is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (citation modified).

H&M asserts that Plaintiff does not have standing to seek injunctive relief because his allegation that he would likely purchase the products in the future is implausible.  (Doc. 40 at 29). At this point in the litigation, the Court accepts Plaintiff's claims that he would "purchase the Products in the future if… the packages and labels were corrected" and that H&M continues to mislabel some of its products. (Doc. 40 at 10). Combined, these two allegations are sufficient to confer Article III standing at the motion-to-dismiss stage.[1] *See Bratton v. Hershey Company*, 2017 WL 2126864 (W.D. Mo. May 16, 2017).

### Plaintiff's Request for Leave to Amend His Complaint is Denied.

In his Memorandum in Opposition to Defendant's Motion to Dismiss and/or Strike, (Doc. 43) Plaintiff requests leave to amend the Second Amended Complaint. In its entirety, Plaintiff's request reads, "For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss, or alternatively, grant Plaintiffs leave to amend." (Doc. 43 at 24).  "Although the district court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), a district court does not abuse its discretion in denying leave to

---

[1] In its Reply, H&M states that there is no threat of future harm to Plaintiff because "the green hangtags upon which Plaintiff's claims are premised were discontinued back in 2022, and any existing products with green hangtags were allowed to sell through." (Doc. 45 at 14). The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at  561. H&M's argument is premature at the motion-to-dismiss stage.

amend where the plaintiff "made no motion for leave to amend and did not explain the substance of his proposed amendment[.]" *United States ex rel. Ambrossechia v. Paddock Laboratories, LLC*, 855 F.3d 949, 956 (8th Cir. 2017) (quoting *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006)). As Plaintiff does not explain how he wishes to amend his Second Amended Complaint, his request for leave to amend is DENIED.

## CONCLUSION

Defendant's Motion to Dismiss (Doc. 39) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Claims are Dismissed to the Extent They Rely on H&M's Website and Marketing Materials.

Defendant's Motion to Strike (Doc. 39) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's proposed class is limited to the two products that Plaintiff purchased: Satin Resort Shirt Bright Blue and an ankle-length Satin Skirt Black.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE